IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARIUS HOLMES, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) Case No. 05 C 2775 |
| Village of Streamwood, Officer M. PIATEK, Villlage of Hoffman Estates, and Officer M. TEIPEL, Defendants. | ) ) HONORABLE CHARLES R. NORGLE ) ) ) |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the court is Defendant's Motion for Partial Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the court grants Defendant's Motion for Partial Summary Judgment.

**I. BACKGROUND**[1]

**A. Facts**

This case arises out of an altercation on June 4, 2003 between Plaintiff Darius Holmes ("Holmes"), and Defendants Officer Martin Piatek ("Piatek") and Officer Matthew Teipel ("Teipel") in the parking lot of a 7-Eleven in Streamwood, Illinois. On the evening of June 4, Piatek was on duty patrolling convenience stores, gas stations, and similar establishments. Piatek had been investigating armed robberies that recently occurred in the area, included one that took

---

[1] The court takes the undisputed facts from the parties' Local Rule 56.1 Statements, and notes disputed facts within the text.

1

place the previous night at a 7-Eleven located at 305 North Barrington Road, in Streamwood. Around 11:30 p.m. Piatek noticed Holmes inside a car in the 7-Eleven parking lot. Piatek stated he noticed the vehicle, because it was the only one parked in front of the convenience store. Piatek approached Holmes to investigate why he was in this parking lot at such a late hour. According to Piatek, the occupants in Holmes' car resembled the description of suspects who had committed the armed robbery the night before.

Additionally, Piatek considered the vehicle and its occupants suspicious for several reasons: the car's engine was not running, the lights were off given the time of night, the location of the car at the same 7-Eleven that was robbed at gun-point the previous night. Piatek approached Holmes and asked to see his license and registration. At the time, Holmes' hands were not visible to Piatek. Holmes did not comply with Piatek's request, and instead asked why Piatek needed to see his drivers license. Piatek then asked Holmes to exit the vehicle. At that moment, Piatek believed that Holmes may have been carrying a weapon. Piatek grabbed Holmes' right arm and spun him around towards the car. Piatek was alone as this occurred. The other occupants remained in the car.

Detective Teipel heard that Piatek was investigating a suspicious vehicle over the radio frequency, and proceeded to the 7-Eleven to provide assistance. According to Piatek, when Teipel arrived on the scene, Holmes had already exited the vehicle, and Piatek had grabbed hold of Holmes' right arm. When both officers attempted to handcuff Holmes, Piatek told Teipel that Holmes had hit him and to "take him down." Piatek and Teipel threw Holmes to the ground, handcuffed him, and placed Holmes under arrest. According to the Defendants, Teipel was also aware of the armed robbery at the 7-Eleven at 305 Barrington Avenue, as well as the description

2

of the suspects, and thought that Holmes fit the description of the suspects.

## B. Procedural History

In June 2004, Holmes was charged with battery and resisting arrest in state court against both Piatek and Teipel. He was acquitted on all four counts. On May 9, 2005, Holmes filed his four count Complaint, alleging violations of § 1983, use of excessive force by Piatek and Teipel, and a claim of malicious prosecution. Then, on December 29, 2005, Defendants filed their Motion for Partial Summary Judgment, on the § 1983 and malicious prosecution claims. Holmes filed his Response on January 13, 2006, and Defendants Replied on January 20, 2006. Holmes has communicated that "Detective Piatek will no longer be a party to this suit. . . pursuant to a settlement agreement." Pl.'s Resp., at 1. Therefore, the court will analyze the Motion for Summary Judgment only as to Teipel. The Motion for Partial Summary Judgment is fully briefed and before the court.

## II. DISCUSSION

## A. Standard of Review

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Heft v. Moore, 351 F.3d 278, 283 (7th Cir. 2003), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Szymanski v. Rite-Way Lawn Maintenance Co., 231 F.3d 360, 364 (7th Cir. 2000); see also Vukadinovich v. Bd. of Sch. Tr.'s of North Newton School, 278 F.3d 693, 699 (7th Cir. 2002).

In deciding a motion for summary judgment, the court can only consider evidence that

3

would be admissible at trial under the Federal Rules of Evidence. See Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. See FED. R. CIV. P. 56(c); see also Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1108 (7th Cir. 2004). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Spiegla v. Hall, 371 F.3d 928, 935 (7th Cir. 2004). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When a party moves for summary judgment, the court must view the record and all inferences in a light most favorable to the non-moving party. Ameritech Benefit Plan Comm. v. Communication Workers of Am., 220 F.3d 814, 821 (7th Cir. 2000). However, the inferences construed in the non-moving party's favor must be drawn from specific facts identified in the record that support that party's position. See Szymanski, 231 F.3d at 364. Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, 328 F.3d. 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

**B. Plaintiff's 42 U.S. § 1983 Claim**

*1. Terry Stops*

Police officers may conduct brief investigatory stops of individuals for officer safety, if such a belief is "based upon specific and articulable facts which . . .reasonably warrant that

4

intrusion." Terry v. Ohio, 392 U.S. 1, 21 (1968). Officers can "conduct a so called Terry stop if they have reasonable suspicion, supported by articulable facts, that criminal activity is afoot." United States v. Baskin, 401 F.3d 788, 791 (7th Cir. 2005) (citing United States v. Swift, 220 F.3d 502, 506 (7th Cir. 2000)). Reasonable suspicion "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." Illinois v. Wardlow, 528 U.S. 119, 123 (2000). It is "something less than probable cause, but more than a hunch." Baskin, 401 F.3d at 791. The law enforcement officer "must be able to articulate more than an 'inchoate and unparticularized suspicion or hunch' of criminal activity." Wardlow, 528 U.S. at 123 (quoting Terry, 392 U.S. at 27). Reasonable suspicion will exist when "there is some 'objective manifestation' that a person is, or is about to be, engaged in prohibited activity." United States v. Hagenow, 423 F.3d 638, 642 (7th Cir. 2005) (quoting Knox x. Smith, 342 F.3d 651, 659 (7th Cir. 2003)).

To determine "whether a police officer had reasonable suspicion to stop an individual, the district court must evaluate the 'totality of the circumstances' to assess whether the detaining officer had particularized and objective basis for suspecting illegal activity." United States v. Zambrana, 428 F.3d 670, 675 (7th Cir. 2005) (quoting United States v. Arvizu, 534 U.S. 266, 272 (2002)). Under this standard, the court must "review the circumstances in their entirety and determine whether a reasonable officer would have believed that he had a 'particularized and objective basis' for suspecting illegal activity." Id. This totality of the circumstances test "necessarily includes the experience of the law enforcement agent and the behavior and characteristics of the subject." Id. See Baskin, 401 F.3d at 791. Such factors can include the behavior and actions of the individual, as well as the professional experience of the officer. See

5

United States v. Odum, 72 F.3d 1279, 1284 (7th Cir. 1995); see United States v. Serna-Barreto, 842 F.2d 965, 967 (7th Cir. 1988) (Terry stop did not become arrest when officer pointed his gun at the suspect).

Here, both Piatek and Teipel possessed a reasonable articulable suspicion to conduct a Terry stop on Holmes. First, Piatek approached Holmes' unlit vehicle in an empty parking lot close to midnight. Piatek was alone, and was aware of the previous armed robbery at the 7-Eleven where the car was parked, and Holmes matched the description of the suspect in the crime. Furthermore, Holmes was unresponsive when Piatek asked for identification. Given the totality of the circumstances, Piatek had a reasonable suspicion to conduct a "stop and frisk" on Holmes, to ensure Piatek's own safety. See Terry, 392 U.S. at 27; Zambrana, 428 F.3d at 675.

In addition, Teipel had a reasonable articulate suspicion to conduct a Terry stop on Holmes as well. Teipel received a radio call from Piatek about the suspicious car parked in the 7-Eleven parking lot, Teipel also knew about the armed robberies in the area, and had a description of the suspects. When Teipel arrived on the scene, he saw Piatek holding Holmes in a wrist lock. Teipel then assisted Piatek in handcuffing Holmes. Given all of these facts known to Teipel at the time of directly prior to the arrest, Teipel possessed the necessary reasonable articulable suspicion to conduct a Terry stop on Holmes. See id. The fact that the Terry stop may "have been accomplished by 'less intrusive' means does not, by itself, render the search unreasonable." United States v. Ocampo, 890 F.3d 1363, 1370 (7th Cir. 1989) (quoting Cady v. Dombrowski, 413 U.S. 433, 447 (1973)).

Furthermore, the fact that Teipel and Piatek handcuffed Holmes does not necessarily equate to an arrest. The officer's attempt to handcuff Holmes "was brief, and was appropriate to

6

accomplish the purposes of an investigatory stop." Tom v. Voida, 963 F.2d 952, 958 (7th Cir. 1992); see United States v. Glenna, 878 F.2d 967, 972-73 (7th Cir. 1989) (placing suspect in handcuffs does not necessarily convert Terry stop into arrest); United States v. Henlsey, 469 U.S. 221 (1985) (investigative stop when officer approached defendant's car with gun drawn). Other courts "have agreed that an officer can point a gun at a suspect without transforming an investigatory stop into an arrest." Campo, 890 F.3d at 1370 (citations omitted).

### 2. *Probable Cause Determination*

Holmes claims that Teipel lacked probable cause to arrest him, and therefore violated his rights under § 1983. Specifically, Holmes alleges that "the seizure of Plaintiff was without any legal cause. The foregoing was unnecessary, unreasonable, and excessive. . . ." Compl., ¶ 18.

In order for a law enforcement officer to posses probable cause for an arrest, he or she must "reasonably believe, in light of the facts and circumstances within their knowledge at the time of the arrest, that the suspect has committed or was committing an offense." United States v. Parra, 402 F.3d 752, 764 (7th Cir. 2005) (quoting Payne v. Pauley, 337 F.3d 767, 776 (7th Cir. 2003)). The officer's determination of probable cause centers around "an exercise of judgment which 'turns on the assessment of probabilities in particular factual contexts, not readily, or even usefully, reduced to a neat set of facts.'" Id. (quoting Maxwell v. City of Indianapolis, 998 F.2d 431, 434 (7th Cir. 1993)). The probable cause standard "applies to all arrests, without the need to 'balance' the interest and circumstances involved in particular situations." Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001) (quoting Dunaway v. New York, 442 U.S. 200, 208 (1979)); United States v. Breit, 429 F.3d 725, 728 (7th Cir. 2005) ("[P]robable cause is a fluid concept based on common-sense interpretations of reasonable police officers. . . .") (quoting

7

United States v. Brown, 366 F.3d 456, 458 (7th Cir. 2004)). "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates, 462 US 213, 245 n. 13 (1983).

Furthermore, under the "collective knowledge" doctrine, when "law enforcement officers are in communication regarding a suspect, the knowledge of one officer can be imputed to the other officers." United States v. Lenoir, 318 F.3d 725, 728 (7th Cir. 2003). The officers who actually makes the arrest "need not personally know all the facts that constitute probable cause if they reasonably are acting at the direction of another officer. . . ." Parra, 402 F.3d at 764. In such a case, "the arrest is proper so long as the knowledge of the officer directing the arrest, or the collective knowledge of the agency he works for, is sufficient to constitute probable cause." Id.

Based on the facts in the record, the court find that as a matter of law, Teipel possessed probable cause to arrest Holmes for resisting arrest. If Piatek possessed the requisite probable cause to arrest Holmes, then under the collective knowledge doctrine, that knowledge is imputed to Teipel. An examination of the record shows that Piatek was aware of the several armed robberies that occurred in the area, and was in fact investigating a particular armed robbery at the 7-Eleven where Holmes parked his car, at 11:30 p.m., with his engine and headlights turned off. In addition, Holmes and his passengers matched the description of the suspects who robbed the same 7-Eleven where Piatek found Holmes. See New York v. Belton, 453 U.S. 454, 461 (1981); U.S. v. Ross, 456 U.S. 798, 825 (1982). Holmes did not comply with Piatek's request for his license, and when Piatek and Teipel attempted to handcuff Holmes, he pushed both officers away. See Pl.'s Stmt. of Mat. Facts, Ex. C, D, G, H. Furthermore, Teipel had probable cause to

arrest Holmes for resisting arrest and battery when Holmes pushed Teipel when he tried to handcuff him. See id. Therefore, the court finds Piatek, and consequently Teipel, possessed probable cause to arrest Plaintiff, based on the existence of facts known to him at the time of the arrest. See Lenoir, 318 F.3d at 728 ; Payne, 337 F.3d at 776; see also United States v. Lechuga, 925 F.3d 1035, 1039 (7th Cir. 1991) (quoting United States v. Campo, 890 F.2d 1363 (7th Cir. 1989)).

### 2. *Qualified Immunity*

Assuming that Teipel did not possess probable cause to arrest Holmes, with an abundance of caution, the court will analyze Defendants' qualified immunity defense. The doctrine of qualified immunity "shields government officials against suits arising out of their exercise of discretionary functions 'as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" Jones v. Wilhelm, 425 F.3d 455, 460 (7th Cir. 2005). A court must decide "whether the facts, when viewed in the light most favorable to the plaintiff, indicate that the officer's conduct violated some constitutional right of the plaintiff." Id. (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). "If the answer to the first question is yes, then the court must determine whether the constitutional right violated was 'clearly established' at the time of the alleged violation." Id. The police officer will "enjoy qualified immunity unless the court affirmatively answers both questions." Id; see Smith v. Lamz, 321 F.3d 680, 685 (7th Cir. 2003) ("[W]hen a police officer receives information sufficient to raise a substantial chance of criminal activity from a person whose truthfulness he has no reason to doubt, that information is sufficient to establish probable cause.")

Based on the facts in the record, there is no evidence to suggest that Teipel violated any of Holmes' constitutional rights. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." Id. at 406. It cannot be said that Teipel's conduct was unlawful, given the facts of the situation, including his knowledge of both the previous armed robbery at the 7-Eleven, the description of the suspects, and Piatek's radio call that he was investigating a suspicious vehicle. See Johnson v. Larabida Children's Hospital, 372 F.3d 894, 898 (7th Cir. 2004). Viewing the facts in the light most favorable to Holmes, there is no indication that Teipel's conduct violated any of Holmes' constitutional rights. Law enforcement is "accorded this ample protection not as a license to violate constitutional rights without recourse nor as an excuse to turn a blind eye to the requirements of the law, but to preserve the vigilance of those individuals vested with the obligation to protect the public interest in the face of ambiguity." Sparing v. Vil. of Olympia Fields, 266 F.3d 684, 688 (7th Cir. 2001) (citing Hunter v. Bryant, 502 U.S. 224, 228-29 (1991)). As a result, Teipel is entitled to qualified immunity for conducting the arrest in question. See Jones, 425 F.3d at 460.

**C. Holmes' Malicious Prosecution Claim**

Count IV of the Complaint alleges a state claim of malicious prosecution against Teipel and the Village of Hoffman Estates (the "Village"). In order to prevail on a claim of malicious prosecution under Illinois law, "a plaintiff must show the following: (1) the commencement. . . of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) malice; and (5) damages." Logan v. Caterpillar, Inc., 246 F.3d 912, 921-22 (7th Cir. 2001). A plaintiff must establish all five of

these elements, "the absence of even one element will preclude recovery for malicious prosecution." Id. (quoting Washington v. Summerville, 127 F.3d 552, 557 (7th Cir. 1997).

The court has previously held that Teipel possessed probable cause to arrest Holmes for battery and resisting arrest, based upon Teipel's statement in his police report that Holmes pushed him while both officers attempted to place him under arrest. See Woods v. City of Chicago, 234 F.3d 979, 988 (7th Cir. 2001) ("district court was entitled to consider the arrest report. . . even if they were not admissible as affidavits. . . ."). As a result, because Teipel had probable cause to arrest Holmes, Holmes' claim for malicious prosecution is necessarily doomed. See Sparing, 266 F.3d at 688.

## D. Holmes' Excessive Force Claim

The court notes that the remaining issue in this case is Holmes' claim of excessive force against Teipel. The issue is taken under advisement, and the court instructs the parties to further brief the issue of excessive force, keeping in mind the issues raised in Bell v. Irwin, 321 F.3d 637, 640 (7th Cir. 2003).

## III. CONCLUSION

For the foregoing reasons, the court grants Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 2/21/06

11