

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DARIUS HOLMES, )
)
        Plaintiff, )
)
v. )
) Case No. 05 C 2775
VILLAGE OF STREAMWOOD, ) HONORABLE CHARLES R. NORGLE
VILLAGE OF HOFFMAN ESTATES, and )
OFFICER M. TEIPEL, )
)
        Defendants. )

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the court is Defendant's Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the court grants Defendant's Motion for Summary Judgment.

## I. BACKGROUND[1]

**A. Facts**

This case arises out of an altercation on June 4, 2003 between Plaintiff Darius Holmes ("Holmes"), and Defendants Officer Martin Piatek ("Piatek") and Officer Matthew Teipel ("Teipel") in the parking lot of a 7-Eleven in Streamwood, Illinois. On the evening of June 4, Piatek was on duty patrolling convenience stores, gas stations, and similar establishments. Piatek had been investigating armed robberies that recently occurred in the area, including one that took

---

[1] The court takes the undisputed facts from the parties' Local Rule 56.1 Statements, and notes disputed facts within the text.

1

place the previous night at a 7-Eleven located at 305 North Barrington Road, in Streamwood. Around 11:30 p.m. Piatek noticed Holmes and other men inside a car in the 7-Eleven parking lot. Piatek stated he noticed the vehicle, because it was the only one parked in front of the convenience store. Piatek approached Holmes to investigate why he was in this parking lot at such a late hour. According to Piatek, the occupants in Holmes' car resembled the description of suspects who had committed the armed robbery the night before.

Additionally, Piatek considered the vehicle and its occupants suspicious for several reasons: the car's engine was not running, the lights were off given the time of night, and the location of the car at the same 7-Eleven that was robbed at gun-point the previous night. Piatek approached Holmes and asked to see his driver's license and registration. At the time, Holmes' hands were not visible to Piatek. Holmes did not comply with Piatek's request, and instead asked why Piatek needed to see his drivers license. Piatek then asked Holmes to exit the vehicle. At that moment, Piatek believed that Holmes may have been carrying a weapon. Piatek grabbed Holmes' right arm and spun him around towards the car. Piatek was the only officer on the scene at this time. The other occupants remained in the car.

Detective Teipel heard that Piatek was investigating a suspicious vehicle over the radio frequency, and proceeded to the 7-Eleven to provide assistance. According to Piatek, when Teipel arrived on the scene, Holmes had already exited the vehicle, and Piatek had grabbed hold of Holmes' right arm. Holmes claims that he cannot remember whether he told the officers that they could not "take him down" because he "lifted weights everyday." When both officers attempted to handcuff Holmes, Piatek told Teipel that Holmes had hit him and to "take him down." Piatek and Teipel threw Holmes to the ground, handcuffed him, and placed Holmes

2

under arrest. Teipel claims that he was also aware of the armed robbery at the 7-Eleven at 305 Barrington Avenue, as well as the description of the suspects, and believed that Holmes fit that description.

**B. Procedural History**

In June 2004, Holmes was charged with battery and resisting arrest in state court against both Piatek and Teipel. He was acquitted on all four counts. On May 9, 2005, Holmes filed his four count Complaint, alleging violations of § 1983, use of excessive force by Piatek and Teipel, and a claim of malicious prosecution. On February 21, 2006 the court granted partial summary judgment in favor of the Defendants on the § 1983 and malicious prosecution claims. Holmes v. Vil. of Streamwood, 2006 WL 468017, *4 (N.D. Ill., Feb. 21, 2006). In his Response Brief, Holmes communicated that "Detective Piatek will no longer be a party to this suit. . . pursuant to a settlement agreement." The excessive force claim was not an issue in that opinion.

Then, on March 16, 2006, Teipel filed his Motion for Summary Judgment on the remaining excessive force claim. On April 14, 2006, Holmes filed his Response, and on April 28, 2006, Teiple filed his Reply. The Motion for Summary Judgment is fully briefed and before the court.

## II. DISCUSSION

**A. Standard of Review**

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56©. The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Heft v. Moore, 351 F.3d 278, 283 (7th Cir. 2003), that raise more than a mere scintilla of evidence to

show a genuine triable issue of material fact. See Szymanski v. Rite-Way Lawn Maintenance Co., 231 F.3d 360, 364 (7th Cir. 2000); see also Vukadinovich v. Bd. of Sch. Tr.'s of North Newton School, 278 F.3d 693, 699 (7th Cir. 2002).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. See FED. R. CIV. P. 56©; see also Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1108 (7th Cir. 2004). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Spiegla v. Hall, 371 F.3d 928, 935 (7th Cir. 2004). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When a party moves for summary judgment, the court must view the record and all inferences in a light most favorable to the non-moving party. Ameritech Benefit Plan Comm. v. Communication Workers of Am., 220 F.3d 814, 821 (7th Cir. 2000). However, the inferences construed in the non-moving party's favor must be drawn from specific facts identified in the record that support that party's position. See Szymanski, 231 F.3d at 364. Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, 328 F.3d. 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

4

## B. Holmes' Excessive Force Claim

In Count II of the Complaint, Holmes alleges that the physical force Teipel used "was unnecessary, unreasonable, and excessive." Compl., ¶ 23. Claims alleging that "law enforcement officers have used excessive force, deadly or not, in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Abdullahi v. City of Madison, 423 F.3d 763, 768 (7th Cir. 2005) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). In order to determine "whether a particular seizure was reasonable, a court should carefully consider the 'facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Lawrence v. Kenosha County, 391 F.3d 837, 843 (7th Cir. 2004) (quoting Graham, 490 U.S. at 396).

The arresting officer's behavior is "evaluated for objective reasonableness based upon the information the officers had when the conduct occurred." Saucier v. Katz, 533 U.S. 194, 207 (2001). This reasonableness standard takes into account the fact that "police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." Lawrence, 391 F.3d at 843 (quoting Graham, 490 U.S. at 396-97). With these principles in mind, we turn to Holmes' claim.

Based on the evidence in the record, the court finds that Teipel acted in an objectively reasonable manner. Piatek had already seized Holmes when Teipel arrived. Therefore, when Teipel came to assist Piatek, he observed Piatek and Holmes in a situation where Holmes was

5

outside of his vehicle, with several other individuals who remained in the Defendant's car, and Piatek as the lone police officer on the scene. Piatek was placed in a situation where he was required to subdue Holmes outside of the automobile, and at the same time, keep an eye on those individuals that remained in the car. In dealing with several individuals in a darkened parking lot at 11:30 p.m., Piatek was uncertain as to whether any of these men possessed a firearm. At the time of this encounter, Teipel believed that Holmes was an individual who fit the description of an armed robbery suspect that occurred at the very same location not even two days prior. Furthermore, Piatek stated that Holmes had struck him. As a result, based on Piatek's assessment of the situation, Teipel believed that Holmes "posed an immediate threat to the safety to the officers. . . and actively resisted arrest." Abdullahi, 423 F.3d at 768.

Moreover, Holmes contends that he may have shouted to the officers that the officers "could not hurt him" and that he "lifted weights every day." Holmes cannot remember if he responded to Piatek's alleged threat that he was going to hurt Holmes. While these facts are disputed by the parties, it does not effect the court's decision in this case. "The existence of disputed facts which do not affect the outcome will not preclude summary judgment." Marshall v. Allen, 984 F.2d 787, 790 n. 2 (7th Cir. 1993)(quoting Johnson v. Pelker, 891 F.2d 136, 138 (7th Cir. 1989)). Based the information Teipel possessed at the time he encountered Holmes, Teipel objectively believed that Holmes posed a danger to both officers. See Saucier, 533 U.S. at 207. Whether Holmes said that he was a weightlifter, or that the two officers could not take him down, did not change the facts of the case. Without these statements, Holmes still matched the description of an armed robbery suspect, his car was parked in the same location as a 7-Eleven that was robbed the night before, and Holmes' car still resembled the car at the scene of the

6

previous crimes. Teipel's reasonableness is not judged from hindsight, but instead "from the perspective of a reasonable officer on the scene." Graham, 490 U.S. at 396.

Given the facts and circumstances of this particular case, Teipel acted in an objectively reasonable manner when he placed Holmes in a wrist lock in response to Holmes' behavior towards both Piatek and Teipel. See Lawrence, 391 F.3d at 843; Abdullahi, 423 F.3d at 768. A police officer's "ability to make a stop or an arrest 'necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" Lawrence, 391 F.3d at 843 (quoting Graham, 490 U.S. at 396). Whether that force is reasonable must be examined given the totality of the circumstances. As the court has found, Teipel viewed the events as to require Holmes be placed in a wrist lock. When Holmes resisted and threatened the officers, a greater amount of force was required, to ensure both officer safety, and that the situation did not escalate.

### III. CONCLUSION

For the foregoing reasons, the court grants Defendant's Motion for Summary Judgment. IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge

United States District Court

DATED: 6-7-06

7